# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff-<br>      Respondent,<br><br>  v.<br><br>GRADY HANKS,<br><br>      Defendant-<br>      Petitioner. | CASE NO. 1:12-CR-000133-LJO-SKO<br><br>MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, PURSUANT TO 28 U.S.C. § 2255<br><br>(Doc. 48) |

On April 16, 2015, Petitioner Grady Hanks ("Petitioner"), a federal prisoner proceeding pro se, filed a motion pursuant to 28 U.S.C. § 2255, challenging his sentence based on allegations of ineffective assistance of counsel and requesting an evidentiary hearing on the issues presented therein. Doc. 48. Specifically, Petitioner contends that his defense attorney's performance was deficient because the attorney failed to file a motion to suppress and provided faulty advice that induced his guilty plea and waiver of trial rights, rendering his plea constitutionally invalid. *See id.* Upon request by this Court (Doc. 49), the Government filed an opposition to Petitioner's motion, in which it argues that Petitioner's motion fails to show that Petitioner was prejudiced by his attorneys' conduct. Doc. 50. Although the Court authorized a reply from Petitioner (*See* Doc. 52), Petitioner failed to file a reply.

   For the reasons below, the Court DENIES Petitioner's motion.

# I.     BACKGROUND

## A.  Indictment and Plea Agreement

On May 3, 2012, Petitioner was indicted by a federal grand jury on charges of (1) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Doc. 1 at 2. Petitioner was arraigned on June 18, 2012, and entered a plea of not guilty. Doc. 4. From June 2012 until January 22, 2013, Petitioner was represented by the Office of the Federal Defender. Docs. 4, 6, 14. Petitioner retained attorney Robert Sherman Wynne ("Wynne"), who made his first appearance on January 22, 2013. Doc. 14.

Petitioner executed a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 18 at 1. It provides, in relevant part:

> Agreements by the Defendant
>
> …
>
> (b) Defendant agrees to enter a plea of guilty to the indictment which charges him with being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1), and possession of 28 grams or more of a substance containing cocaine base ("rock") with the intent to distribute in violation of Title 21 United States Code, Section 841(a)(1).
>
> …
>
> (e) Defendant knowingly and voluntarily waives his Constitutional and statutory rights to appeal his plea, sentence and conviction … [including his right] to attack collaterally his mental competence, and his plea, or his sentence, including but not limited to, filing a motion under 28 U.S.C. § 2255
>
> …
>
> (f) Defendant further acknowledges that his plea of guilty is voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty.
>
> …
>
> (j) The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§

3551-3742 and 28 U.S.C. §§ 991-998, and as modified by *United States v. Booker* and *United States v. Fanfan*, 543 U.S. 220 (2005)), and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. …

<u>Factual Basis</u>

Defendant will plead guilty because he is in fact guilty of the crimes set forth in the Indictment. Defendant also agrees that the following are the facts of this case, although he acknowledges that, as to other facts, the parties may disagree:

> On March 21, 2012, the defendant was in possession of a Glock, Model 23, .40 caliber semi-automatic handgun. The handgun was found in the engine compartment of a vehicle that the defendant was a passenger in that was stopped in the City and County of Fresno, State and Eastern District of California. The defendant admitted ownership of the handgun and said he had hidden it in the engine compartment.

> The defendant has the following prior felony convictions:

>> 1996 Fresno County Superior Court conviction for a violation of California Health and Safety Code, Section 11352 – Transportation of Cocaine, … ;
>> 1997 Fresno County Superior Court conviction for a violation of California Health and Safety Code, Sections 11351.5 – Possession of Cocaine for Sale, … ;
>> 2003 Fresno County Superior Court conviction for a violation of California Health and Safety Code, Section 11350(a) – Possession of Cocaine, … ;
>> 2003 Fresno County Superior Court conviction for a violation of California Health and Safety Code, Section 11350(a) – Possession of Cocaine, … ;

> The firearm was not manufactured in CA, and therefore traveled in and affected interstate commerce

> Officers also found cocaine base ("crack" or "rock") under the seat where defendant was sitting and in his sock. The cocaine base was possessed with the intent to distribute. The defendant admitted the cocaine base ("crack" or "rock") was his. The cocaine base ("crack" or "rock") possessed by the defendant for purposes of distribution was more than 28 grams …

<u>Potential Sentence</u>
The following is the maximum potential sentence which defendant faces:

3

<u>COUNT 1</u>:
    (a) Imprisonment.
        Minimum: None.
        Maximum: Ten years imprisonment
        …
<u>COUNT 2</u>:
    (a) Imprisonment
        Minimum: Five years imprisonment
        Maximum: Forty years imprisonment.
        …

<u>Waiver of Rights</u>
Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    (a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to be represented by an attorney at all stages of the proceedings, and would have a right to a public and speedy trial …

Defendant understands that by pleading guilty he is waiving all of the rights set forth above and defendant's attorney has explained those rights to him and the consequences of his waiver of those rights.

Doc. 18 at 1-12.

//

**B. Change of Plea Hearing**

On May 20, 2013, Petitioner and Wynne appeared before this Court for his change of plea hearing, where he pleaded guilty to both counts in the indictment, pursuant the plea agreement. Docs. 18, 19; Rough Transcript of May 20, 2013 Change of Plea Proceedings ("Plea Tr.").

During the plea colloquy, Petitioner affirmed to the Court that he wanted to change his plea from not guilty to guilty. Plea Tr. at 1:12-15. He acknowledged that he recognized the signature on the plea agreement as his own, that his signature on the plea agreement meant that he had the chance to review the entire document with the help of Wynne, that Wynne answered any questions to his satisfaction, and that he had no more questions about the plea agreement. *Id.* at 1:22-25; 2:1-3. Petitioner affirmed that he understood the elements of the crimes to which he was pleading guilty, Counts 1 and 2, that he understood the factual basis set forth in the plea agreements, and that those facts were true. *Id.* at 2:4-12. He stated that he understood that, as to Count 1, the maximum sentence was ten years of imprisonment, and, as to Count 2, the minimum sentence was five years

4

of imprisonment and the maximum sentence was forty years of imprisonment. *Id.* at 2:13-23. Petitioner affirmed his understanding that the decision whether or not to plead guilty was his own, and that if he wished to continue to plead not guilty, the Court would set the matter for trial in a timely fashion by judge or jury. *Id.* at 2:14-20. The Court also notified Petitioner of his trial rights to testify and call witnesses, and informed him that by pleading guilty, he would give up his rights to a trial. *Id.* at 3:1-9. Petitioner affirmed his understanding of these trial rights and affirmed that he wished to give these rights up. *Id.* at 3:10-13. He moreover stated that no one was forcing or threatening him to plead guilty, and that no one had promised him something other than what was contained in the plea agreement. *Id.* at 3:14-18. The Court proceeded to read the charges contained in the Indictment, and Petitioner pleaded guilty to both Count 1 and Count 2. *Id.* at 5:15-25; 6:1-25; 7:1-3. The Court then accepted Petitioner's plea as knowing, intelligent, and voluntary. *Id.* at 7:14-16.

### C. Sentencing

According to Petitioner's Presentence Investigation Report ("PSR") (Doc. 23), his total offense level was 31, after taking into account the quantity of cocaine base attributable to him, the presence of a firearm during his offense, and his career offender status. PSR at ¶¶ 30-43. Petitioner's extensive criminal record, along with his career offender status, resulted in his criminal history category designation of VI. *Id.* at ¶¶ 50-109. At a total offense level of 31 and a criminal history category of VI, the applicable range from the Sentencing Guidelines is 188 to 235 months. *Id.* at 60. Pursuant to 18 U.S.C. § 3553(a), the PSR also listed both aggravating and mitigating factors for the Court to consider in the imposition of a sentence. *Id.* at ¶¶ 197-204. Specifically, in light of both the aggravating factors—including Petitioner's five prior, separate drug-related felony convictions, his criminal record of approximately twenty-five years, "countless probation and parole revocations," and "extensive history of abusing alcohol and illegal controlled substances," as well as the mitigating factors—including "a difficult and stressful childhood, fraught with physical and emotional abuse, neglect, and trauma," various health problems, and limited education and work experience, the PSR recommended a sentence of 188 months, at the bottom end of the

Guidelines range. *Id.* The PSR's recommended 188-month sentence incorporated 120 months on Count 1 and 188 months on Count 2, to be served concurrently. *Id.* at 60.

Petitioner was sentenced by this Court on April 28, 2014. Doc. 35. At sentencing, he affirmed that he had reviewed the PSR with Wynne. Doc. 40 at 3. Additionally, Wynne requested that the Court depart from the recommended Sentencing Guidelines range and impose "something in the 120-month range, which seems would give the People their pound of flesh and punish [Petitioner] for these offenses." *Id.* at 4. Wynne provided no legal justification for his request. *See id.* After the matter was submitted, the Court sentenced Petitioner in accordance with the PSR's recommendation and imposed a 188-month term of imprisonment for Count 2 and a 120-month term of imprisonment for Count 1, to be served concurrently, for a total term of 188 months. *Id.* at 5; Doc. 36.

## II.    STANDARD OF REVIEW

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). A § 2255 motion to vacate, set aside, or correct the sentence of a federal prisoner entitles the prisoner to relief "[i]f the court finds that … there has been such a denial or infringement of the constitutional rights of the prisoner …" 28 U.S.C. § 2255(b). To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

"When a district court reviews a § 2255 habeas motion, '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'" *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2010) (quoting 28 U.S.C. § 2255). The court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are "so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155,

1159 (9th Cir. 1994) (internal citations omitted). Thus, an evidentiary hearing is only required if: (1) the prisoner "allege[s] specific facts which, if true, would entitle him to relief; and (2) the petition, files and record of the case cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

## III.   ANALYSIS

Petitioner argues Wynne's representation was constitutionally deficient because (1) Wynne failed to file a motion to suppress evidence gathered during Petitioner's initial arrest in early 2012 by the Fresno Police Department; (2) Wynne failed to investigate two possible defenses; and (3) Wynne erroneously advised Petitioner that he would receive a sentence of 151 months of imprisonment if he pleaded guilty. Doc. 48 at 4-5. Petitioner further argues that, (5) as a result of Wynne's deficient performance, his plea was entered into involuntarily and unintelligently and is thus constitutionally invalid; and (6) an evidentiary hearing is necessary because the record does not reflect the factual allegations asserted in the instant motion. *Id.* at 7-10.

### A. Ineffective Assistance of Counsel

Under the Sixth Amendment, a criminal defendant is entitled to the effective assistance of counsel at all critical stages of a criminal proceeding, including plea bargaining and sentencing. *Lafler v. Cooper*, ___ U.S. ____, 132 S.Ct. 1376, 1384 (2012). To prevail on an ineffective assistance of counsel claim in a § 2255 motion for habeas relief, the petitioner "must demonstrate that [his] attorney's representation 'fell below an objective standard of reasonableness,' and that [he] suffered prejudice as a result." *United States v. Rodriguez-Vega*, 797 F.3d 781, 786 (9th Cir. 2015) (quoting *Strickland v. Washington*, 466 U.S. 668, 668, 694 (1984)). In *Hill v. Lockhart*, the Supreme Court extended the two-part *Strickland* test to "challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. 52, 58 (1985). In these instances, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

The first four grounds raised in Petitioner's motion argue that Wynne rendered ineffective assistance of counsel in his case. Accordingly, the Court must evaluate each claim under the standard set forth in *Strickland. United States v. Aileman*, 710 F.Supp.2d 960, 973 (N.D. Cal.

2008). "In applying and defining this standard substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 562 U.S. 115, 126 (2011). Petitioner's request for an evidentiary hearing is addressed in connection with each argument.

### 1. Motion to Suppress

Petitioner first contends that Wynne "was ineffective where he failed to file a suppression motion concerning unlawful arrests that led to seizures of drugs, and an unmirandized statement, categorized as fruits of the poisonous tree." Doc. 48 at 24.

This claim is barred both by the explicit waiver contained within the plea agreement and by *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), which holds that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Thus, challenges to guilty pleas in the federal habeas context are generally limited to two major issues: (1) whether the plea was voluntary and intelligent; and (2) whether the petitioner received constitutionally adequate assistance of counsel with regard to the plea process. *United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) ("[A] plea agreement that waives the right to file a federal habeas petition pursuant to 28 U.S.C. § 2254 is unenforceable with respect to an [ineffective assistance of counsel] claim that challenges the voluntariness of the waiver."); *United States v. Sarabia*, 2016 WL 233166, *8-9 (E.D. Cal. Jan. 20, 2016) (Where a habeas petitioner has waived his right to collateral attack, "[t]o the extent that a habeas petitioner seeks to claim he received ineffective assistance of counsel premised on his attorney's allegedly faulty advice, he may do so only based upon that advice as it related to the decision to enter his guilty plea.").

Here, Petitioner pleaded guilty, in open court, to both Counts charged in the indictment. Docs. 18, 19; Plea Tr. at 6:18-19; 7:2-3. Moreover, pursuant to his plea agreement, he "knowingly and voluntarily agree[d] to waive all Constitutional and statutory rights to … attack collaterally his … plea, or his sentence, including but not limited to, filing a motion under 28 U.S.C. § 2255 …" Doc. 18 at 4. His claim that Wynne failed to file a motion to suppress pertains to conduct by Wynne

that occurred before he entered his guilty plea. Doc. 48 at 23-29. Thus, by his plea agreement, Petitioner has waived his right to have this Court review any claims which allege constitutional deprivations that occurred prior to the entry of his guilty plea. *Tollett*, 411 U.S. at 267; *Lampert*, 422 F.3d at 871. Accordingly, Petitioner's claim regarding Wynne's failure to file a motion to suppress does not amount to a cognizable federal habeas claim of ineffective assistance of counsel. *See id.* As to this argument, his motion is DENIED. Relatedly, because this argument does not raise a cognizable claim, Petitioner is not entitled to an evidentiary hearing on this issue. *See Howard*, 381 F.3d at 877.

## 2. Alleged Defenses

Petitioner additionally claims that before he entered his guilty plea, he informed Wynne of his desire to go to trial, but that Wynne failed to investigate the following two possible defenses. First, Petitioner claims that his brother was willing to testify in his defense concerning the firearm found in the car. Second, Petitioner maintains that "the car [he] was driving during the March traffic stop was not his vehicle and [that therefore] he had a viable defense that the drugs found on the passenger side, where a passenger was sitting," were not in [his] possession. Doc. 48 at 33.

Although Petitioner seems to argue that Wynne's failure to investigate these possible defenses had a direct bearing on his decision to plead guilty, *see id.*, the Court finds that these two claims are likewise barred by *Tollett* and *Lampert* because they relate to conduct that occurred before Petitioner entered his guilty plea. 411 U.S. at 267; *Fairbank v. Ayers*, 650 F.3d 1243, 1254-55 (9th Cir. 2011) (petitioner's claim at the guilt phase "must be limited to the contention that trial counsel was ineffective only in advising petitioner to plead guilty"); *Mullins v. Foulk*, 2015 WL 5935325, *3 (N.D. Cal. Oct. 13, 2015) ("under [*Tollett* and *Fairbank*]…, a petitioner's claims that prior to his no contest plea defense counsel did not adequately investigate and develop defenses are precluded by his plea"); *Brown-Monroe v. McDonald* , 2012 WL 614048, *10-11 (C.D. Cal. Sept. 10, 2012), findings and recommendation adopted by *Brown-Monroe v. McDonald*, 2012 WL 6178095 (C.D. Cal. Dec. 11, 2012) (finding that *Tollett* foreclosed claims that counsel was "ineffective for failing to present a viable defense" and that counsel "fail[ed] to investigate evidence independently" because such claims "purport to be directed solely at conduct of trial

9

counsel that preceded the entry of petitioner's guilty plea"). The connection between Wynne's failure to investigate these alleged defenses and Petitioner's decision to plead guilty is too attenuated for the Court to conclude otherwise. *Tollett*, 411 U.S. at 267 ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process"); *Avalos v. Dexter*, 2009 WL 4049604, *7-8 (C.D. Cal. Nov. 20, 2009) (rejecting petitioner's argument that as a result of counsel's failure to conduct discovery, locate witnesses, and investigate his allegations, counsel was not prepared to provide petitioner fully informed advice as to whether to plead guilty or go to trial as conclusory, vague, and "insufficient to support a claim for federal habeas relief"); *see also Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994), superseded on other grounds by statute, as stated in *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008) (declining to consider an alleged pre-plea constitutional violation in a habeas appeal). As this claim does not present a cognizable basis for relief, Petitioner's motion is DENIED on this ground and the Court declines to grant Petitioner an evidentiary hearing on this matter. *McMullen*, 98 F.3d at 1159.

### 3. Guidelines Range

Petitioner next alleges that Wynne failed to inform him that he would have been sentenced as a career criminal, regardless of whether he pleaded guilty or proceeded to trial, and that this advice was objectively deficient and prejudicial under *Strickland*. Doc. 48 at 31-32. As this claim pertains to Wynne's performance during plea negotiations, it has not been waived by the terms of his plea agreement. *See Tollett*, 411 U.S. at 267; *Lampert*, 422 F.3d at 871.

The Ninth Circuit has recognized that in certain circumstances, an attorney's failure to anticipate the likely sentencing range can amount to ineffective assistance of counsel during the plea bargaining process. *United States v. Manzo*, 675 F.3d 1204, 1209 (9th Cir. 2012); *see also Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) ("Though a mere inaccurate prediction, standing alone, would not constitute ineffective assistance … the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys."). Specifically, Petitioner states he had expressed a desire to go to trial. Doc. 48 at 33. However, according to Petitioner, Wynne advised him that if he pleaded guilty, he would face a sentencing range of 151 to 188 months of

imprisonment, rather than the 188 to 235-month range he actually faced at sentencing, and that this advice "effectively misled" him about his potential sentence and "induced him to forfeit his trial rights." *Id.* at 31-33.

Even assuming Wynne did advise Petitioner that he would face a sentencing range of 151 to 188 months of imprisonment, this does not amount to the "gross mischaracterization of the likely outcome" that would be required for a finding that the advice was constitutionally deficient. *Manzo*, 675 F.3d at 1209-10. Attorneys are not "required to accurately predict what the jury or court might find," and are not "constitutionally defective because [they] lacked a crystal ball." *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002); *see also United States v. Garcia*, 909 F.2d 1346, 1348 (9th Cir. 1990) ("[A]n erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea."). In *Iaea*, the Ninth Circuit found the "gross mischaracterization" standard satisfied where counsel advised the defendant that "there was almost no chance of his receiving an extended or life sentence, and that he had a chance to receive probation of he pled guilty" but the court then imposed upon said defendant to a life sentence, a twenty-year sentence, and a ten-year sentence. 800 F.2d at 863-864; *see also Manzo*, 675 F.3d at 1208 (thirteen year difference between actual sentence and low end of range the petitioner claims he was expecting to fall within). However, in *Doganiere v. United States*, the Ninth Circuit found that a three-year difference between the attorney's prediction and the court's actual sentencing was insufficient to form the basis of an ineffective assistance of counsel claim. 914 F.2d 165, 168 (9th Cir. 1990). In Petitioner's case, there is a difference of thirty-seven months, or three years and one month, between 151 months—the lower end of the range that Wynne allegedly stated he could receive, and 188 months—the sentence he actually received. The Court further notes that Petitioner's sentence of 188 months, fifteen years and eight months, is still well below forty years, the statutory maximum he could have faced for Count 2, pursuant to the plea agreement. *See* Doc. 18 at 9. Wynne's advice about Petitioner's possible sentence thus does not amount to a "gross mischaracterization of the likely outcome" such that would render his advice constitutionally deficient. *See Sophanthavong v. Palmateer*, 378 F.3d 859, 869 (9th Cir. 2004) (sixty-month difference between presumptive sentence predicted by defense attorney and the actual sentence

imposed, where sentence was still "well below the maximum sentence," was not a gross

mischaracterization); *Doganiere*, 914 F.2d at 168.

Therefore, the Court finds that Petitioner has failed to demonstrate that Wynne's purported

representation with regard to Petitioner's sentencing fell below the range of competence as required

by the first prong of the *Strickland* test, *see* 466 U.S. at 689, there is no need to consider prejudice,

and denial of this claim is proper. *See Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to

satisfy either prong of the *Strickland* test obviates the need to consider the other."). As such, the

Court DENIES Petitioner's motion on this ground, and finds that Petitioner is not entitled to an

evidentiary hearing on this issue. *McMullen*, 98 F.3d at 1159.

### 3. Voluntariness of Petitioner's Plea

For the same reasons described in the previous section, Petitioner additionally claims that

the guilty plea he entered on May 20, 2013 was involuntary and unintelligent because he relied on

Wynne's advice to make the decision to plead guilty, rather than go to trial. Doc. 48 at 35. He

claims that if Wynne had informed him that the career offender enhancement would be applied

regardless of whether he pleaded guilty or went to trial, he would have elected to proceed to trial.

Doc. 48 at 37.

"A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary

and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006). To determine the

voluntariness of a plea, the court must "look to the totality of the circumstances, examining both the

defendant's 'subjective state of mind' and the 'constitutional acceptability of the external forces

inducing the guilty plea.'" *Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) (quoting *Iaea*, 800

F.2d at 866). In reviewing the totality of the circumstances surrounding Petitioner's plea, the Court

first turns to the plea colloquy of Petitioner, conducted on May 20, 2013. Plea Tr. The colloquy

reads, in relevant part, as follows:

> THE COURT: Mr. Hanks, my understanding is you want to change your plea from not
> guilty to guilty. Is that what your understanding is?
>
> PETITIONER: Yes, sir.
>
> THE COURT: Do you read English?

PETITIONER: Yes, sir.

THE COURT: I believe that I have your original plea agreement in my hand, and I think this is your signature on the last page of it. Do you recognize your signature as yours?

PETITIONER: Yes, sir.

THE COURT: That signature to me means that you have had a chance to review this entire document with the help of your lawyer, and, if you had any questions, you asked him and he answered to your satisfaction, and that you have no more questions about this document. Is that what that signature means to you?

PETITIONER: Yes, sir.

THE COURT: When you went through this document, this plea agreement, did you understand the elements of the crime to which you are pleading, Counts 1 and 2?

PETITIONER: Yes, sir.

THE COURT: And when you went through this document, did you understand the facts?

PETITIONER: Yes, sir.

THE COURT: And were those facts true?

PETITIONER: Yes, sir.

…

THE COURT: And as to Count 2, there is a minimum of five years, maximum of 40 years … Do you understand that?

PETITIONER: Yes, sir.

…

THE COURT: Do you have any questions at all about this document?

PETITIONER: No, sir.

THE COURT: Do you understand that this decision whether or not to plead guilty at this point has got to be yours. You can talk to people, but ultimately, they don't make the decision for you?

PETITIONER: Yes, sir.

THE COURT: And if you wanted to continue to plead guilty, I would set the matter for trial in a timely fashion by judge or jury … Do you understand these trial rights?

PETITIONER: Yes. Yes, sir.

THE COURT: Do you wish to give them up? Because if you plead guilty, you have to give them up.

PETITIONER: Yes, sir.

THE COURT: Is anybody forcing you or threatening you to get you to do this?

PETITIONER: No, sir.

THE COURT: Is anybody promising you something other than what's in the plea agreement?

PETITIONER: No, sir.

…

THE COURT: What I'm going to do is I'm going to read you the charges, and if you don't understand something or you have a question, just tell me right then and we will take care of it right then. All right?

PETITIONER: Yes, sir

THE COURT: In the indictment, in Count 1, the Grand Jury charges you on or about March 21, 2012, in Fresno County, in the State and Eastern District of California and elsewhere, having been convicted of a crime punishable by imprisonment for a term exceeding one year; specifically, a 1996 Fresno County Superior Court conviction for a violation of Health and Safety Code section 11352, transportation of cocaine, in an action ending in 816-8.

…

And you knowingly possessed a firearm, specifically a Glock model 23, .40 caliber pistol, which had been shipped and transported in interstate commerce, all in violation of Title 18 United States Code section 922(g)(1). As to Count 1, how do you wish to plead?

PETITIONER: Guilty

THE COURT: Count 2, the Grand Jury further charges you on or about March 21, 2012, in Fresno County, State and Eastern District of California, you knowingly and intentionally possessed with the intent to distribute 28 grams and more of a mixture containing a detectible amount of cocaine base, crack, or rock, a Schedule II controlled substance, in violation of Title 21 of the United States Code section 841(a)(1). How do you wish to plead as to Count 2?

PETITIONER: Guilty

…

THE COURT: The Court accepts the knowing, intelligent and voluntary waiver of rights, knowing, intelligent and voluntary change of plea.

Plea Tr. at 1:12-25; 2:1-12, 21-22; 3:12-20; 4:9-19; 5:10-22; 6:18-25; 7:1-3, 14-16.

//

"Findings made by the judge accepting the plea 'constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity'" *Doe*, 508 F.3d at 571 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore,

Petitioner's statements at his plea hearing "properly constitute an 'imposing' barrier to collateral attack." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986).

In this case, Petitioner cannot overcome the "strong presumption of verity" the Court must accord to the statements he made during his plea hearing. *See id.* The Court first notes that throughout the plea colloquy, there is no indication of equivocation on Petitioner's part in admitting responsibility for the charges contained in the indictment, pleading guilty to these charges, and relinquishing his trial rights. Thus, nothing from the plea colloquy reveals that anything out of the ordinary with regard to Petitioner's subjective state of mind and any external forces inducing his guilty plea. *See Doe*, 508 F.3d at 571 (finding that the defendant's response of "I guess" during a plea colloquy did not render the plea involuntary because the trial court asked further clarifying questions until the defendant provided a definitive answer to the question); *see also United States v. Gaither*, 245 F.3d 1064, 1069 (9th Cir. 2001) ("In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight."); *Brown-Monroe*, 2012 WL 6140408 at *9-10 (review of plea transcript revealed that the petitioner was made aware of the maximum possible sentence he was facing and waiver of trial rights, which therefore "belie[d] any contention by petitioner that his no contest plea was not voluntary and intelligent").

A petitioner may "attack the voluntary and intelligent character of [a] guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases]." *Tollett*, 411 U.S. at 266-67 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). However, at this stage, he must also demonstrate "gross error on the part of counsel," and that the advice he received from counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." *Turner*, 281 F.3d at 880 (internal citations omitted). Petitioner's argument that Wynne's erroneous advice renders his plea involuntary has been foreclosed by the Ninth Circuit. In *Womack v. Del Papa*, a defendant argued that his attorney's erroneous prediction that he would receive a lighter sentence than he actually received rendered the plea not knowingly, voluntarily, or intelligently entered. 497 U.S. 998, 1003-04 (9th Cir. 2007). Womack's attorney told him that his

guilty plea was his "best chance" of him receiving thirty to forty-years, but he was actually sentenced to eight terms of life without parole. *Id.* at 1003. Relying on the record, which clearly demonstrated that Womack was informed of the potential sentence and had acknowledged that he could face a life sentence, the Ninth Circuit found that the Womack could not show that he was prejudiced by his attorney's prediction, and affirmed the lower courts' findings that the plea was voluntarily and intelligently entered into. *Id.* Even assuming that Womack's attorney's performance was deficient, the Ninth Circuit held that he was not prejudiced "because the plea agreement … alerted [him] to the potential consequences of his guilty plea." *Id.* at 1003; *cf. Chizen*, 809 F.2d at 562-63 (finding the presumption of verity overcome where the defendant was told by his attorney that the trial judge had agreed not to sentence him to more than 90 days when he signed the plea agreement, and defendant was then sentenced to 180 days of imprisonment).

Here, as discussed above, Wynne's advice that Petitioner would receive a 151-month sentence instead of the 188-month sentence he actually received was not a "gross error" that rendered Petitioner's guilty plea constitutionally invalid. *Turner*, 281 F.3d at 881. Through his plea bargaining process, Petitioner was made aware that he could face up to forty years of imprisonment for Count 2. Doc. 18 at 9. Petitioner's affirmation in open court acknowledging the forty-year maximum penalty therefore calls into question his allegation that he was unaware that he could be subject to a sentencing range beyond 151 months. *See* Plea Tr. at 2:21-25; 3:1-4; *Blackledge*, 431 U.S. at 76 (1977). As Petitioner was on notice that he could receive a substantially heavier sentence than the 151 months Wynne allegedly told him that he would receive if he pleaded guilty, Petitioner cannot demonstrate that he was sufficiently prejudiced under *Strickland* by this advice. *Womack*, 497 F.3d at 1003-04; *see also Sexton v. Cozner*, 679 F.3d 1150, 1156 (9th Cir. 2012) (attorney's prediction that defendant might be eligible for parole after twenty-five years if he pled guilty was not prejudicial where defendant stated that he understood that he could face a mandatory sentence of life imprisonment and acknowledged that the sentencing judge was not bound by sentencing recommendations). Thus, the Court DENIES the claim that Petitioner's plea was not voluntarily and intelligently entered, as the record does not support his assertions that, but for Wynne's advice, he would not have pleaded guilty. The plea agreement alerted him to the maximum sentence, which

1   was far higher than his actual sentence. *See id.*; *Hill*, 474 U.S. at 59. Therefore, even assuming the

2   truth of Petitioner's assertions regarding the advice Wynne gave him, this argument does not state a

3   valid entitlement to relief and the Court DENIES this claim. Accordingly, Petitioner is not entitled

4   to an evidentiary hearing on this issue. *McMullen*, 98 F.3d at 1159

5                          4. Attorney Wynne's Health Condition

6          Throughout these claims, Petitioner raises Wynne's medical issues as possibly having

7   impaired Wynne's ability to provide effective representation in his case. Doc. 48 at 22, 26, 34.

8   Petitioner believes that Wynne's "multiple stroke attacks contributed to his lackadaisical

9   performance in the case, including memory loss and failure to visit and spend quality time with

10  Petitioner in discussing trial strategies." *Id.* at 34. Wynne's medical issue was noted at a hearing on

11  September 23, 2013, when Petitioner's sentencing was continued to a later date. Doc. 28.

12         However, the Ninth Circuit has rejected "[t]he mere fact that counsel may have suffered

13  from mental illness at the time of trial …" as grounds to presume prejudice. *Dows v. Wood*, 211

14  F.3d 480, 485 (9th Cir. 2000) (citing *Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir. 1987)). The *Ylst*

15  court adopted the reasoning that "mental illness is too varied in its symptoms and effects to justify a

16  per se reversal rule without evidence that the attorney's performance fell below the constitutional

17  norm," and upheld the traditional rule that "a defendant must point to specific errors or omissions

18  which prejudiced his defense, because if a mental illness or defect indeed has some impact on the

19  attorney's professional judgment it should be manifested in his courtroom behavior and conduct of

20  the trial."  826 F.2d at 876.

21         Here, the Court has determined, *supra*, that Wynne's representation was not constitutionally

22  deficient under the standard set forth in *Strickland*. Moreover, Petitioner has failed to draw any

23  connection between Wynne's medical condition and any "*specific* errors or omissions which

24  prejudiced his defense." *See id.* (emphasis added). The Court thus finds that there is insufficient

25  evidence to support Petitioner's claim that Wynne's representation was compromised by any kind

26  of health issue, and that this claim should be DENIED. Likewise, Petitioner is not entitled to an

27  evidentiary hearing on this issue. *See Farrow v. United States*, 580 F.2d 1339, 1360-61 (9th Cir.

28  1978) (dismissal of § 2255 motion without an evidentiary hearing was proper where petitioner's

                                            17

1  motion "present[ed] no more than conclusory allegations, unsupported by facts and refuted by the

2  record").

3  **IV.    CONCLUSION AND ORDER**

4         The Court concludes that none of the grounds raised in Petitioner's habeas motion have

5  merit, as Petitioner has failed to demonstrate that his attorney rendered ineffective assistance of

6  counsel or that his plea was constitutionally invalid. Accordingly,

7         **IT IS HEREBY ORDERED** that Petitioner Grady Hanks's motion to vacate, set aside, or

8  correct his sentence (Doc. 48) is **DENIED** pursuant to 28 U.S.C. § 2255. The Court moreover

9  **DECLINES** to issue a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(2). The Clerk of

10 Court is **DIRECTED** to **CLOSE THE CASE**.
   IT IS SO ORDERED.

11

12    Dated:   **February 10, 2016**              **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28